UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| SONJI A. BLACK BEAR,<br><br>Plaintiff,<br><br>vs.<br><br>HEIDI LINGREN[1]; STATE DEPARTMENT OF SOCIAL SERVICES; JENNIFER ODEGARD; SHAWNDAI STANDING CLOUD; MISTY MCCLASTER; MIKE VON SAVOYE; ROXIE ERICKSON; ILISJA DUFFY; PAULA PEDERSON; and BETSEY HARRIS,<br><br>Defendants. | 5:23-CV-05049-RAL<br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS, DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL, DIRECTING SERVICE, AND 1915 SCREENING |

Plaintiff Sonji A. Black Bear filed a pro se lawsuit under 42 U.S.C. §§ 1983, 1985, and 1986 and the Indian Child Welfare Act, 25 U.S.C. § 1914. Doc. 1 at 1; Doc. 2 at 1; Doc. 9-1 at 49. She moves for leave to proceed in forma pauperis, Doc. 3, and filed a motion to appoint counsel, Doc. 4.

## I.    Motion for Leave to Proceed in Forma Pauperis

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." Lee v. McDonald's Corp., 231 F.3d 456, 459 (8th Cir. 2000).

---

[1] Black Bear lists as a defendant Heidi Lingren, a judge of the Seventh Judicial Circuit of South Dakota. The defendant's actual last name is Linngren. This Court will refer to the defendant by the actual spelling of her last name in this opinion.

But in forma pauperis status is a privilege, not a right.  Williams v. McKenzie, 834 F.2d 152, 154 (8th Cir. 1987).  Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court.  Cross v. Gen. Motors Corp., 721 F.2d 1152, 1157 (8th Cir. 1983).  After review of Black Bear's financial affidavit, the Court finds that she has insufficient funds to pay the filing fee.  Thus, Black Bear's motion for leave to proceed in forma pauperis, Doc. 3, is granted.  This Court now screens Black Bear's complaint under 28 U.S.C. § 1915.

## II.   1915 Screening

### A.   Factual Allegations of Black Bear's Complaint

Black Bear alleges that the defendants violated her right to custody of her grandchildren, to raise her grandchildren, and to speak at her state-court hearing.  Doc. 1 at 1.  Black Bear was the Indian Custodian in two child custody cases pending in the Seventh Judicial Circuit of the State of South Dakota: A22-357 for custody of Ev.A.H.H., Em.A.H.H., and A.H.H. and A22-260 for custody of Z.H.H., J.H.H., C.M., O.M.,[2] G.R.L., L.A.H.H.,[3] and L.J.H.H.[4]  Doc. 9-1 at 17–18.  On two separate occasions Black Bear's minor granddaughters were taken from her and placed in the

---

[2] Black Bear submitted a copy of a "Pick Up and Place Order Abuse or Neglect" from the Seventh Judicial Circuit of South Dakota.  Doc. 9-1 at 18.  The order identifies Black Bear as the "Indian Custodian" and addresses custody of several of Black Bear's grandchildren: Z.H.H., J.H.H., G.R.L., L.J.H.H., and L.A.H.H.  Id.  The order also discusses custody of C.M. and O.M.  Id.  Black Bear does not allege any facts indicating that she seeks custody of C.M. and O.M., and she does not indicate that C.M. and O.M. are her grandchildren.  See id. at 10, 18; see also id. at 27 (stating that Black Bear is the grandmother of G.R.L., Z.H.H., Em.A.H.H., Ev.A.H.H., A.H.H., J.H.H., L.A.H.H., and L.J.H.H.).  Thus, this Court construes Black Bear's complaint as not alleging any claims about custody of C.M. and O.M.
[3] Black Bear refers to L.A.H.H. and L.A.L.  For screening purposes, the Court will assume that Black Bear is referring to the same person.  The Court will refer to the minor as L.A.H.H. because that name is used most often throughout Black Bear's complaint.
[4] Black Bear refers to L.J.H.H. and L.J.L.  For screening purposes, the Court will assume that Black Bear is referring to the same person.  The Court will refer to the minor as L.J.H.H. because that name is used most often throughout Black Bear's complaint.

custody of the South Dakota Department of Social Services (DSS). Id. at 14, 26; Doc. 1 at 3.  In June 2022, DSS took custody of Ev.A.H.H., Em.A.H.H., and A.H.H.  Doc. 1 at 3; Doc. 9-1 at 14, 26.  At the time they were taken into DSS custody, Ev.A.H.H. and Em.A.H.H. were fourteen years old, and A.H.H. was twelve years old. Doc. 1 at 3; Doc. 9-1 at 1.  On August 26, 2022, DSS took custody of G.R.L., L.A.H.H., and L.J.H.H.  Doc. 9-1 at 14, 26.  At the time they were taken into DSS custody, G.R.L. was sixteen years old, and L.A.H.H. and L.J.H.H. were six years old. Id. at 14, 18, 26.   Black Bear also submitted exhibits referencing custody of two additional grandchildren: Z.H.H. and J.H.H. Id. at 18, 27.

Black Bear had custody of Ev.A.H.H., Em.A.H.H., and A.H.H. since 2014. Id. at 16. Ev.A.H.H., Em.A.H.H., and A.H.H. were removed from Black Bear's home by their mother, Tiara LaClaire. Id. at 21, 37, 64; Doc. 11 at 18.  Black Bear tried to have the children returned to her by a full faith and credit order.  Doc. 9-1 at 64; Doc. 11 at 18.  Black Bear submitted to this Court a document, allegedly typed by Tiara, which admitted that Tiara "removed [her] kids from [her] mother, Sonji BlackBears [sic] house while [Black Bear] was out of town.  [Tiara] knew [Black Bear] would try and pick up [Ev.A.H.H., Em.A.H.H., and A.H.H.] so [Tiara] told [her] daughters to lie about [Black Bear] abusing them and if they keep lying they would be able to stay with [their mother]."[5]  Doc. 9-1 at 21.

On June 3, 2022,[6] Judge Craig A. Pfeifle, a circuit judge in South Dakota's Seventh Judicial Circuit, signed a full faith and credit order, which "ordered law enforcement to remove the listed children [Ev.A.H.H., Em.A.H.H., and A.H.H.] in the tribal court order from the custody of **Tiara**

---

[5] The document claims that Tiara later asked her attorney to tell the state court that she coached her children to lie but the attorney refused.  Doc. 9-1 at 21.
[6] Black Bear alleges that Em.A.H.H., Ev.A.H.H., and A.H.H. were taken from her custody on June 4, 2022, but the Rapid City Police Department's report indicates that the full faith and credit order was executed on June 3, 2022.  Doc. 9-1 at 1, 42, 43, 75.

LeClaire [sic] and place them with **Sonji Black Bear**." Id. at 1. When the Pennington County deputies arrived to pick up Ev.A.H.H., Em.A.H.H., and A.H.H., Tiara instructed her daughters to tell the deputies about the abuse they suffered at Black Bear's residence. Id. Em.A.H.H. informed officers that Black Bear mocked, hit, and punched them, and A.H.H. told the deputies that Black Bear hit the girls with a spoon and banged her head against a wall. Id. But see id. at 28. Ev.A.H.H. said that Black Bear has not assaulted her but that Black Bear punished them by putting them in a corner. Id. at 1, 28; Doc. 11 at 5. Ev.A.H.H., Em.A.H.H., and A.H.H. described how they were uncomfortable being around Gilbert Mesteth and other people who visited Black Bear's residence. Doc. 9-1 at 1. Black Bear informed officers that Ev.A.H.H., Em.A.H.H., and A.H.H. were likely being coached to lie by their mother. Id. at 2. See also id. at 28 (Ev.A.H.H. admitted that she and Em.A.H.H. previously made up a story about Gilbert so that Black Bear would call the police and report it).

The Rapid City Police Department (RCPD) investigated the reports of abuse from Ev.A.H.H., Em.A.H.H., and A.H.H. Id. at 2. Investigators tried to call Judge Pfeifle but were unable to reach him. Id. at 1. DSS supervisors contacted Judge Heidi Linngren, another circuit judge in South Dakota's Seventh Judicial Circuit, who advised officers to take custody of the three girls. Id. at 2, 42. DSS Investigator Mike Von Savoye took Ev.A.H.H., Em.A.H.H., and A.H.H. into DSS custody. Id. at 2. The other children in Black Bear's custody, L.A.H.H., L.J.H.H., and K.M. Jr., were not taken into DSS custody because Tiara and the girls reported no neglect or abuse of the other children and a welfare check did not reveal any concerns. Id. at 1–2. Ev.A.H.H., Em.A.H.H., and A.H.H. later recanted their statements against Black Bear after an unsupervised visit with Tiara and Black Bear. Id. at 2. The RCPD closed their case against Black Bear for lack of leads. Id.; Doc. 2 at 3. Black Bear claims that the children were interviewed, and there was no

evidence of physical or sexual abuse. Doc. 2 at 3, 5; Doc. 9 at 4; Doc. 12 at 2. Black Bear alleges

that the RCPD's investigation was complete before her first court date. Doc. 9-1 at 1.

On June 9, 2022, Black Bear had her 48-Hour Hearing for custody of Ev.A.H.H.,

Em.A.H.H., and A.H.H. Id. at 16, 25, 39, 43–45, 75; Doc. 2 at 3. Prior to the hearing Von Savoye

told Black Bear that the State's position was to close the case and return physical and legal custody

of Ev.A.H.H., Em.A.H.H., and A.H.H. to Black Bear. Doc. 2 at 3; Doc. 9-1 at 16, 25, 39, 75.

Black Bear alleges that, despite Von Savoye testifying that he intended to return the children,

Judge Linngren "intimidated and bullied the caseworker [Von Savoye] until he changed his mind"

about returning the children. Doc. 9-1 at 75. See also Doc. 2 at 3; Doc. 9-1 at 16, 25, 39. Black

Bear alleges that Judge Linngren used the fact that Black Bear kept contact with her adult children

as a reason to deny her custody. See Doc. 9-1 at 16, 25, 39, 75; Doc. 11 at 18. Judge Linngren

referenced Black Bear's adult son, Skyler Warrior; Judge Linngren presided over Warrior's

custody case, which was unrelated to Black Bear's cases. See Doc. 9-1 at 16, 25, 39, 75. During

Black Bear's hearing, Judge Linngren raised her voice and said, she "dealt with Skyler in this court

on his child and he got upset and security had to fallow [sic] him out of the building!! . . . now do

you want these children around someone like that!" Id. at 16. Von Savoye allegedly looked

stunned and said no. Id. at 16, 25, 39. Judge Linngren determined that Ev.A.H.H., Em.A.H.H.,

and A.H.H. were to be placed in foster care, and they were placed in Aberdeen, South Dakota. Id.

at 25, 43–45; Doc. 1 at 3.

On August 26, 2022, G.R.L., L.A.H.H., and L.J.H.H. were taken from Black Bear's

custody.[7] Doc. 9-1 at 14, 16, 25–26; Doc. 11 at 18. She alleges that removal of G.R.L., L.A.H.H.,

---

[7] Black Bear claims that DSS took away G.R.L., L.J.H.H., and L.A.H.H. because Black Bear had
contact with Taccara Mesteth, the mother of Z.H.H., J.H.H., G.R.L., L.J.H.H., L.A.H.H., C.M. and
O.M. Doc. 9-1 at 27. Taccara did not have custody of her children at the time that she contacted

and L.J.H.H. violated her rights because "Mike Von Savoye, came to [her] home w[ith] police and No warrant removed [her] grandchildren[.]"  Doc. 2 at 4.  Black Bear requested that G.R.L., L.A.H.H., and L.J.H.H. be kept together, but L.A.H.H. and L.J.H.H. were placed in separate foster homes, and G.R.L. was placed in WellFully, an adolescent care center in Rapid City, South Dakota. Doc. 9-1 at 26, 35.  Black Bear claims that Von Savoye put L.A.H.H. and L.J.H.H. in danger by not using car seats and speeding in and out of traffic.  Doc. 2 at 3.  Another DSS employee drove a separate car; DSS Supervisor Shawndai Standing Cloud drove a third car, which she pulled up in front of Black Bear's car and kept braking so Black Bear would hit the car.[8]  Doc. 9-1 at 26, 35.

On August 27, 2022, Black Bear received notice of a 48 Hour Hearing for G.R.L., L.J.H.H., and L.A.H.H.  Id. at 18.  The hearing was scheduled for August 29, 2022, before Judge Linngren in the Pennington County Courthouse.  Id.  Black Bear claims that in "[c]ourt on the 29th of August the [Pennington County deputy] states attorney Roxie Erickson stated the children were being raped in [Black Bear's] home and police were at [her] house every day."  Id. at 16.  Judge Linngren did not return custody of G.R.L., L.J.H.H., and L.A.H.H. to Black Bear.  Id.

On multiple occasions, Black Bear informed DSS Caseworker Jennifer Odegard and other DSS employees of her many concerns with the foster care and care center placements of her

---

Black Bear.  Id.  Black Bear claims that she did not allow Taccara around the children when Taccara contacted her, but because of the contact, G.R.L., L.J.H.H., and L.A.H.H. were removed from Black Bear's custody.  Id.  Black Bear claims that G.R.L., L.J.H.H., and L.A.H.H. would not have been removed from her home if she had not had contact with Taccara.  Id. at 56.  Judge Linngren later ceased visitation with the children for Black Bear and Taccara because of their behaviors.  Id. at 62, 70.

[8] Black Bear alleges that the removal of G.R.L., L.A.H.H., and L.J.H.H. was pre-planned because her Temporary Assistance for Needy Families benefits showed that there were no eligible children in her home in July 2022, but G.R.L., L.A.H.H., and L.J.H.H. were not removed until August 2022. Doc. 9-1 at 13–14.  She also alleges the removal was pre-planned because Mike McCormice, an employee of a state's attorney office, called her to speak with G.R.L.  Id. at 16.  When Black Bear said no, McCormice threatened her saying that he needed to make some calls.  Id.

grandchildren.[9]  Id. at 8, 11, 25, 28, 37, 39–40, 56, 63, 68, 72; Doc. 1 at 3; Doc. 11 at 20; Doc. 12 at 2.  Black Bear claims that Odegard "knows of all the abuse done to [her] grandchildren but refuses to protect them although [Black Bear] ha[s] told DSS from the beginning all that was relayed to [her.]"  Doc. 9-1 at 28.

Black Bear informed Odegard what the children were telling her during their visits, but Black Bear alleges that Odegard failed to communicate with the children.[10]  Doc. 1 at 3.  On November 20, 2022, G.L.R. informed Black Bear of a picture she received of her cousin Ev.A.H.H. lying on a bed with a boy, both of whom were wearing clothes.  Id.; Doc. 9-1 at 9–10, 28, 36–37; Doc. 11 at 1.  On December 2, 2022, Black Bear reported the picture to Odegard.  Doc. 1 at 3; Doc. 9-1 at 9–10.  Black Bear alleges that her grandchildren told her in a video recorded after they ran from DSS placement that "the foster mother was encourging [sic] sex and brought boys to and from her house to engage in sexual activity in her home."  Doc. 1 at 3.  See also Doc. 9-1 at 11, 37, 65; Doc. 11 at 19.  Black Bear reported this activity to Odegard and requested that her grandchildren be returned to Rapid City, South Dakota.  Doc. 1 at 3.  Black Bear alleges that Odegard "said the foster mother was teaching Sex Ed, like it was taught in[ ] school[.]"  Id.  See also Doc. 9-1 at 33.  Black Bear claims that the foster parents have implemented less strict rules as well as allowed and encouraged the girls to engage in behaviors that she did not allow in her home.  Doc. 1 at 3; Doc. 2 at 5; Doc. 9-1 at 11, 27, 31, 33, 37, 40, 51, 65; Doc. 11 at 1–2, 8, 11–12, 19, 21.

---

[9] Black Bear also claims that foster care placements have caused behavioral issues with her grandchildren, which they did not experience while in her custody.  See Doc. 9-1 at 27, 29, 33, 40, 63, 65, 67, 71; Doc. 11 at 19, 21–22; Doc. 12 at 2.  But see Doc. 9-1 at 9, 28.
[10] Black Bear alleges that the defendants have been difficult about scheduling visitations and provided limited information, or denied information, about the children.  Doc. 9-1 at 11, 15, 25, 51, 56–58, 60–61, 71–74; Doc. 11 at 18, 23; Doc. 12 at 3.

On February 1, 2023, Black Bear had a visit with Em.A.H.H., Ev.A.H.H., A.H.H., J.H.H., L.A.H.H., and L.J.H.H. Doc. 9-1 at 64; Doc. 11 at 18. After the visit, Black Bear emailed Odegard to ask why G.R.L. was not present. Doc. 9-1 at 64; Doc. 11 at 18. Odegard informed Black Bear that G.R.L. was reported as a runaway. Doc. 9-1 at 64; Doc. 11 at 18. On February 3, 2023, Black Bear received a call informing her that police were at her house looking for G.R.L. Doc. 9-1 at 65; Doc. 11 at 18. An officer had received an anonymous call from someone claiming to be a family member and informing him that G.R.L. was at Black Bear's residence. Doc. 9-1 at 65; Doc. 11 at 18. Black Bear alleges that the anonymous caller was Odegard, reporting false information to the police. Doc. 9-1 at 65; Doc. 11 at 18–19.

On February 10, 2023, Black Bear had a hearing before Judge Linngren about custody of Ev.A.H.H., Em.A.H.H., and A.H.H. Doc. 1 at 1; Doc. 9-1 at 17. Black Bear alleges that Judge Linngren threatened Black Bear that if she took the stand in her defense, then she would be charged with perjury. Doc. 1 at 1; Doc. 2 at 2, 5. But see Doc. 11 at 25 (Odegard wrote in an email to Black Bear that "[i]n court Judge Linngren found your testimony to be uncredible."). Black Bear also alleges that Judge Linngren "tried to make [Black Bear] admit guilt." Doc. 2 at 2. Black Bear claims that when she asked Judge Linngren if she could be no longer required to complete urinalysis, Judge Linngren said that the urinalysis was the least of Black Bear's worries.[11] Id. Black Bear claims that Judge Linngren terminated her visitation rights based on a letter that was not read in court or provided to her. Id. at 5; Doc. 1 at 3; Doc. 9-1 at 30. See also Doc. 11 at 24

---

[11] Black Bear alleges that DSS Supervisor Misty McClaster told her that the reason she was required to complete urinalysis was because Black Bear's children and others around her were accused of using drugs and alcohol. Doc. 9-1 at 11, 15, 51; Doc. 11 at 23. Black Bear claims that she never did drugs and has not drunk alcohol for twenty years, but Black Bear alleges that Odegard said that Black Bear's tests showed she had consumed alcohol. Doc. 9-1 at 12, 16, 19, 23, 28, 31, 37, 52, 65, 75; Doc. 11 at 19, 23.

(stating "And of the issue with [Black Bear's] visitation terminated was ?  Of a letter that was found in [G.R.L.'s] backpack and was assumed [Black Bear] gave it to her.").  After the February 10, 2023, hearing, Black Bear saw Odegard and Paula Pederson, who was the children's attorney during the custody hearings, exit the court together and enter a car.  Doc. 9-1 at 30, 32.  Black Bear alleges that Odegard and Pederson were "[c]ollaborating together to sway the discussion in [her] case."  Id.  But see Doc. 11 at 25 (Odegard wrote in an email to Black Bear that "[f]or clarification, I assure you it was not the children's attorney that I left the court house [sic] with that day.").

Black Bear alleges that Odegard "lied and coached the children to lie to the courts[,]" collaborated with her supervisor and the children's attorney to sway the outcome, and coerced the children to testify with promises of food and clothing.  Doc. 2 at 2.  See also Doc. 9-1 at 7, 15. Black Bear claims that Odegard and other DSS employees asked the children leading questions trying to get them to admit Black Bear abused them.  Doc. 9-1 at 9, 67–68; Doc. 11 at 19.  Black Bear claims that on one occasion Odegard stood in front of her as she walked by and gave her a dirty look.  Doc. 1 at 3; Doc. 9-1 at 40, 54–55.  Standing Cloud, Odegard's supervisor, allegedly told Odegard to stop, but Standing Cloud later denied that the event happened.  Doc. 1 at 3; Doc. 9-1 at 40–41, 54–55.  Black Bear made a complaint against Odegard to Standing Cloud, but Standing Cloud ignored the complaint.  Doc. 1 at 3.

Black Bear alleges that the defendants violated her First Amendment right to testify in her defense.  Id. at 1.  Black Bear alleges another First Amendment violation because Odegard and Standing Cloud told her she was not allowed to record her conversations with DSS employees and because Odegard told her she was not allowed in the DSS building, which Black Bear alleges is wrongful because it is a public building.  Id.; Doc. 2 at 4.  She alleges that Erickson told DSS, Odegard, and Standing Cloud that Black Bear could not record their meetings or encounters.  Doc.

9 at 2; Doc. 9-1 at 66.  She alleges that defendants violated her Fourteenth Amendment right to be free to raise, see, and visit her grandchildren, right to be free to have a fair and unbiased hearing, and right to be free from unreasonable intrusion.  Doc. 1 at 1.  Black Bear alleges that the defendants violated her Fourth Amendment rights because the children were taken from her home without a warrant or imminent danger, which Black Bear claims was an illegal seizure.  Id.; Doc. 2 at 4; Doc. 9-1 at 33.

Black Bear is a member of the Cheyenne River Sioux Tribe.  Doc. 9-1 at 16.  She called the Indian Child Welfare agents in Eagle Butte, South Dakota, about the taking of her grandchildren.  Id.  Black Bear alleges that the defendants committed slander against her because Odegard told Indian Child Welfare Agent Diana Gerreaux and Black Bear's landlord that children were being sexually assaulted in Black Bear's home.  Doc. 2 at 4; Doc. 9-1 at 16, 25, 39.  She also alleges that the defendants made false reports of abuse.  Doc. 2 at 4.  She claims that because the defendants have said negative things about her without evidence, she has "been sad, anxious, lonely, the children want to come home and they ran away they experienced street life[.]"  Id. at 5.  Black Bear claims that "[w]e as a family feel hopeless[,]" and she "took a pay cut because of [her state custody case] as [she] work[ed] with children[.]"  Id.  She has lost wages, her character has been defamed, and her family has been alienated from one another.  Doc. 9 at 6.

Because Black Bear does not specify whether she is suing the defendants in their individual or official capacity, the suit is treated as if only including official capacity claims.  Docs. 1, 2, 9; Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995).  Black Bear generally alleges that the defendants violated her rights under 42 U.S.C. § 1985 because they "conspire w[ith] DSS to threaten, coerce, intimidate, [herself] as well as [her] grandchildren, DSS try to force [her] to say and sign, untruths in both of [her] cases (A22-260 – A22-357)[.]"  Doc. 9 at 2.  She claims that

all the defendants "had knowledge of the wrong doing in these cases. [sic] and had the power to prevint [sic] the neglectful acts, but all refused to do so." Id. at 6.

Black Bear alleges that DSS "never made reasonable efforts to return [her] grandchildren[.]" Doc. 1 at 3. Black Bear sues Judge Linngren for overlooking evidence, violating Black Bear's due process rights, threatening to charge Black Bear with perjury if she took the stand, trying to make Black Bear admit guilt, and alleging "that was the least of [Black Bear's] worries" when she asked to be taken off urinalysis. Doc. 2 at 2. See also Doc. 1 at 1; Doc. 9-1 at 19. Black Bear sues Odegard because she "lied and coached the children to lie to the courts[,] collaborated w[ith] her supervisor [and the] children's attorney to sway the outcome she wanted, [and] coerce[d] the children [with] promices [sic] of food, clothing to testify[.]" Doc. 2 at 2. Black Bear sues Standing Cloud because she told Black Bear not to record communications with the defendants according to the state's attorney, collaborated with Odegard outside of work, and was previously Black Bear's caseworker in 2019 when her case was dismissed.[12] Id. at 3. Black Bear sues Von Savoye for the unwarranted seizure of the children and placing the children in danger by not using car seats, speeding, and weaving in traffic. Id. Black Bear does not specify why she sues McClaster. See generally Docs. 1, 2. Black Bear sues Erickson for violating her First, Fourth, and Fourteenth Amendment rights, "freedom from deliberately fabricated evidence, preparing court reports, false statements without evidence, due prosess [sic], defamation reputation damage had knoladge [sic] [she] was being treated wrong in court[.]" Doc. 9 at 3.

Black Bear sues three private attorneys: Ilisja Duffy, Paula Pederson, and Betsey Harris. Id. at 3–4. Black Bear sues Duffy for "misrepresentation, Due prosess [sic], stated the Judge

---

[12] Black Bear alleges that Standing Cloud was placed on her prior case after the former caseworker had called Black Bear a "lying Indian bitch[.]" Doc. 9-1 at 51, Doc. 11 at 23. See also Doc. 2 at 3.

Linngren didn't want [Black Bear] to say or testify against DSS, Never made appointments w[ith her]." Id. at 3. See also Doc. 9-1 at 30. Black Bear sues Pederson for "colloberating [sic] w[ith] Jennifer Odergard. they left court house together getting into the Same car, 2-10-23." Doc. 9 at 3–4. See also Doc. 9-1 at 30, 32. But see Doc. 11 at 25. Black Bear sues Harris because she "presented a letter in court that was not read or given to [Black Bear], Coercion – promising [her] grandchild if she told [Black Bear] to admit guilt she would get to go home, influenced the judge to termination of visitation." Doc. 9 at 4. See also Doc. 2 at 5 (alleging that the attorney for Black Bear's grandchildren "suggested [their] visitation be termanaited [sic] of a letter that wasn't read in court or presented to [Black Bear].").

Black Bear requests that her grandchildren be returned and DSS leave them alone and never bother them again. Doc. 1 at 3; Doc. 2 at 6. She requests that Odegard, Standing Cloud, McClaster, and Von Sayoye be stopped "from making any decisions regarding children[;] the severity of handling of [her] grand children is life changing." Doc. 1 at 3. She asks "for the court to look at all evidence, to be free to raise [her] grandchildren and from reprisal and exclude DSS from bringing more false statements & evidence, leave [her] family alone[.]" Doc. 9 at 5. Black Bear also requests $20,000,000.00 in money damages. Doc. 1 at 4.

**B.     Legal Standard**

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also

Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663–64 (8th Cir. 1985). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation omitted) (quoting Twombly, 550 U.S. at 556).

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under 28 U.S.C. § 1915(a), the court must then determine whether the complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B). Martin-Trigona v. Stewart, 691 F.2d 856, 857 (8th Cir. 1982); see also Key v. Does, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). The court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[ ] to state a claim on which relief

may be granted; or (iii) seek[ ] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

### C.   Black Bear's Causes of Action[13]

#### 1.   ICWA Claims Under 25 U.S.C. § 1914

Construing Black Bear's complaint liberally, she asserts claims under the Indian Child Welfare Act (ICWA). See Doc. 9-1 at 49. Black Bear marks a portion of Von Savoye's affidavit discussing custody of Ev.A.H.H., Em.A.H.H., and A.H.H. in June of 2022, stating that "[t]he Affiant finds that the ICWA requirements have not been met and the least restrictive alternative available in the children's best interest is to return physical and legal custody of the children to their grandmother, Sonji Black Bear." Id. She included the notice of hearing for custody of Ev.A.H.H., Em.A.H.H., and A.H.H. Id. at 17. She also provided a "48 Hour Hearing Order Abuse and Neglect" from the Seventh Judicial Circuit of South Dakota ordering Ev.A.H.H., Em.A.H.H., and A.H.H. to remain in DSS custody. Id. at 43–45. Black Bear provided a "Pick Up and Place Order Abuse or Neglect" for G.R.L., L.A.H.H., and L.J.H.H. Id. at 18.

> Under ICWA,
>
> Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.

25 U.S.C. § 1914. See also Jumping Eagle v. Warren, 18-CV-4131-LLP, 2021 WL 462644, at *9 (D.S.D. Feb. 9, 2021) (holding that federal courts are courts of competent jurisdiction for § 1914).

---

[13] The Eighth Circuit, when reviewing an ICWA case involving 48-hour hearings, has held that "South Dakota's temporary custody proceedings are civil enforcement proceedings to which Younger [abstention] principles apply." Oglala Sioux Tribe v. Fleming, 904 F.3d 603, 610 (8th Cir. 2018). This Court is unable to determine on the face of Black Bear's complaint whether Younger abstention should apply.

Judge Linngren held that ICWA applied to custody of Em.A.H.H., Ev.A.H.H., and A.H.H. Doc. 9-1 at 43, 46. Black Bear does not specify if her claims fall under §§ 1911, 1912, or 1913. See id. at 49. Black Bear emphasizes the portion of Von Savoye's June of 2022 affidavit stating that Ev.A.H.H., Em.A.H.H., and A.H.H. were not placed in the least restrictive environment, which he claims is with Black Bear, upon removal from their mother in June of 2022. Id.

Black Bear does not allege that the state lacked jurisdiction to conduct custody hearings for the children or any other errors arising under 25 U.S.C. § 1911; thus, Black Bear has not stated a claim under 25 U.S.C. § 1911. Doc. 9-1 at 46–50. Because Black Bear does not allege that she voluntarily consented to the removal of her grandchildren, this Court finds that she has not stated a claim under 25 U.S.C. § 1913. Id. Black Bear does not allege any circumstances related to 25 U.S.C. § 1912(a), (b), or (f).

Under 25 U.S.C. § 1912(c), "[e]ach party to a foster care placement or termination of parental rights proceeding under State law involving an Indian child shall have the right to examine all reports or other documents filed with the court upon which any decision with respect to such action may be based." Black Bear wrote on the notice of hearing for Ev.A.H.H., Em.A.H.H., and A.H.H. that "[a] letter was brought up by Betsey Harris but never presented to [Black Bear] or read in court[.]" Doc. 9-1 at 17; see Doc. 9 at 4 (Harris "presented a letter in court that was not read or given to [Black Bear]"). Black Bear claims that her visitation rights were terminated based on a letter that was not read in court or provided to her. Doc. 2 at 5; Doc. 9-1 at 30, 32. Because this Court cannot determine that Black Bear's claim under 25 U.S.C. § 1912(c) is wholly without merit, Black Bear's claim under 25 U.S.C. § 1912(c) survives § 1915 screening.

Under 25 U.S.C. § 1912(d), "[a]ny party seeking to effect a foster care placement of . . . an Indian child under State law shall satisfy the court that active efforts have been made to provide

remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful."  Black Bear alleges in her complaint that "the State of Social Services has never made reasonable efforts to return [her] grandchildren."  Doc. 1 at 3.  Construing her complaint liberally, she alleges that DSS has not provided remedial services and rehabilitative programs to prevent the breakup of her family.  See id.  Because this Court cannot determine that Black Bear's claim under 25 U.S.C. § 1912(d) is wholly without merit, Black Bear's claim under 25 U.S.C. § 1912(d) survives § 1915 screening.

> Under 25 U.S.C. § 1912(e),
>
> No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

Construing Black Bear's complaint liberally, she alleges that the determination to place Ev.A.H.H., Em.A.H.H., and A.H.H. in foster care was made without clear and convincing evidence.  See Doc. 2 at 3; Doc. 9-1 at 16, 75.  Black Bear claims that Judge Linngren bullied Von Savoye to change his mind about returning her grandchildren.  Doc. 2 at 3; Doc. 9-1 at 16, 75.  She claims that Judge Linngren said she dealt with Black Bear's son in court and asked Von Savoye if he wanted someone like him around the children; Von Savoye said no.  Doc. 9-1 at 16.  Black Bear claims that the decision was "not based on evidence but on preconceived ideas and basically prejudice toward [her son]."  Doc. 12 at 2.  Black Bear claims that Von Savoye told her that "maybe it [the removal of her grandchildren] has nothing to do with [Black Bear].  Maybe it's ppl [sic] that visit [her]."  Doc. 9-1 at 16.  Black Bear emphasizes the portion of Von Savoye's June of 2022 affidavit stating that Ev.A.H.H., Em.A.H.H., and A.H.H. were not placed in the least restrictive environment, which he claims is with Black Bear.  Id. at 49.  Black Bear has alleged sufficient

facts in her complaint, including Von Savoye's in-court testimony, to show that the determination to remove her grandchildren from her custody was made in the absence of clear and convincing evidence. Because at this point the Court is unable to determine that Black Bear's claim for a violation of ICWA under 25 U.S.C. § 1912(e) is wholly without merit, Black Bear's claim for a violation of ICWA under 25 U.S.C. § 1912(e) survives § 1915 screening.

Black Bear requests return of all her grandchildren. Doc. 9-1 at 68–69. But she has not alleged any facts indicating a violation of ICWA during foster care placements of Z.H.H., J.H.H., C.M., O.M., G.R.L., L.A.H.H., and L.J.H.H. See id. at 18. Thus, Black Bear's ICWA petition for custody of Z.H.H., J.H.H., C.M., O.M., G.R.L., L.A.H.H., and L.J.H.H. is dismissed without prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

"The ICWA does not provide for a cause of action for money damages. The only relief that can be provided is declaratory relief under the Act." Fletcher v. Florida, 858 F. Supp. 169, 173 (M.D. Fla. 1994). See also McClure v. Dohmen, 2009 WL 801586, at *2 (D. Neb. Mar. 24, 2009) ("Plaintiff seeks damages, but such relief is not available under the Indian Child Welfare Act."); Jackson v. Hennepin Cnty. Dep't of Hum. Res. & Pub. Health, 2023 WL 3019013, at *1 n.6 (N.D. Ga. Jan. 19, 2023) ("ICWA does not create a private right of action for money damages"). "[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Because monetary damages cannot be awarded under ICWA and the children are in the custody of the state, Black Bear has not stated any ICWA claim against Duffy, Harris, Pederson, Erickson, and McClaster who are alleged to be "interested parties" for purposes of any declaration of rights and duties under ICWA. Thus, Black

Bear's ICWA claims against Duffy, Harris, Pederson, Erickson, and McClaster are dismissed under 28 U.S.C § 1915(e)(2)(B)(ii).  Black Bear's ICWA claims under § 1912(c), (d), and (e) against DSS, Judge Linngren, Odegard, Standing Cloud, and Von Savoye survive § 1915 screening, because, as employees of the State sued in their official capacities involved with the removal of the children from Black Bear's custody, they are interested parties.

**2.      Claims Under 42 U.S.C. §§ 1983, 1985, and 1986**

**a.      Section 1983 Claims Against South Dakota DSS**

Black Bear sues DSS because "the State of Social Services has never made reasonable efforts to return [her] grandchildren." Doc. 1 at 3.  The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought.  Cory v. White, 457 U.S. 85, 90–91 (1982).  In determining whether an entity is entitled to Eleventh Amendment immunity, the court examines the powers and characteristics of the entity created by state law to determine if it in reality is acting as the state, the degree of local autonomy and control exercised by the entity, and whether the funds to pay an award are derived from the state treasury.  Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985) (citing Laje v. R.E. Thomason Gen. Hosp., 665 F.2d 724, 727 (5th Cir. 1982)).

According to South Dakota statute, the Department of Social Services was created by the state legislature.  See SDCL § 1-36-1.  DSS is an arm of the State of South Dakota and, as such, is not subject to suit under § 1983.  See Cory, 457 U.S. at 90–91.  Thus, Black Bear's § 1983 claims against DSS are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

**b.      Claims Against Erickson**

Erickson is an employee of Pennington County.  Doc. 9 at 1.  Claims against Erickson in her official capacity are the equivalent of a lawsuit against Pennington County.  See Veatch v.

18

Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010).  A county may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Black Bear does not allege that Pennington County has unconstitutional policies or customs; thus, her claims against Erickson, in her official capacity, are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii).

### c.      Claims Against McClaster

Black Bear names as a defendant McClaster.  Doc. 1 at 1.  Black Bear's complaint does not assert any claims against McClaster or allege McClaster's involvement beyond McClaster telling Black Bear that the reason she was required to complete urinalysis was because Black Bear's children and others around her were accused of using drugs and alcohol.  Doc. 9-1 at 11, 15, 51; Doc. 11 at 23.  Thus, Black Bear fails to state a claim upon which relief can be granted against McClaster, and Black Bear's claims against McClaster are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### d.      Claims Against Judge Linngren, Odegard, Standing Cloud, and Von Savoye

Black Bear also alleges several constitutional violations arising out of her child custody hearing: (1) First and Fourteenth Amendment violations for denying Black Bear the right to testify at her court hearing, (2) First and Fourteenth Amendment violations for denying Black Bear's right to record meetings and court proceedings, and (3) Fourteenth Amendment violations for coaching the children to lie during the hearing.[14]  Doc. 1 at 1; Doc. 2 at 2, 5; Doc. 9 at 2–4; Doc. 9-1 at 61.

---

[14] This Court is unaware of any Eighth Circuit authority applying Rooker-Feldman to ICWA cases. Thus, for the purposes of screening, this Court will not apply Rooker-Feldman to the claims alleged in Black Bear's complaint.

### (i)    Official Capacity Claims for Money Damages

Black Bear sues Judge Linngren,[15] Odegard, Standing Cloud, and Von Savoye in their official capacities. As the Supreme Court of the United States has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66. The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id.

Here, Black Bear seeks to recover money damages. Doc. 1 at 4. Judge Linngren, Odegard, Standing Cloud, and Von Savoye are sued in their official capacities for money damages and are employees of the State of South Dakota. Id. at 1. Thus, Black Bear has asserted a claim for money damages against the State of South Dakota. The State of South Dakota has not waived its sovereign immunity. See Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 305 (1990) (citing Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 239–40 (1985)). Thus, Black Bear's claims against Judge Linngren, Odegard, Standing Cloud, and Von Savoye in their official capacities for money damages are dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii).

---

[15] Judges are generally immune from suit if the judge had jurisdiction over the party. See Stump v. Sparkman, 435 U.S. 349, 356–57 (1978). "[I]mmunity only extends to claims against government employees sued in their individual capacities." VanHorn v. Oelschlager, 502 F.3d 775, 778 (8th Cir. 2007) (citations omitted). "[A]bsolute, quasi-judicial immunity is not available for defendants sued in their official capacities." Id. at 779. Black Bear sues Judge Linngren in only her official capacity. See Egerdahl, 72 F.3d at 619. Thus, for the purposes of screening, this Court does not apply judicial immunity to Black Bear's claims against Judge Linngren.

### (ii)    Substantive Due Process

Black Bear alleges that defendants infringed upon her Fourteenth Amendment right to raise, see, and visit her grandchildren. Doc. 1 at 1. Construing Black Bear's complaint liberally, she alleges a violation of her substantive due process rights under the Fourteenth Amendment. "To establish a substantive due process violation, [the plaintiff] must demonstrate that a fundamental right was violated and that the conduct shocks the conscience." Akins v. Epperly, 588 F.3d 1178, 1183 (8th Cir. 2009) (footnote omitted) (citing Moran v. Clarke, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (Bye, J., concurring and writing for a majority on this issue)).

The United States Supreme Court "has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." Moore v. East Cleveland, 431 U.S. 494, 499 (1977) (quoting Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 639–40 (1974)). Several courts have recognized that "extended relatives may have an interest in preserving an existing family relationship." In the Interest of N. M-O, 2007 Haw. LEXIS 292, at *7–8 n.3 (Haw. Oct. 5, 2007) (collecting cases). See also Moore, 431 U.S. at 504 (plurality opinion) ("The tradition of . . . especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition."); Osborne v. City of Riverside, 385 F. Supp. 2d 1048, 1054 (C.D. Cal. 2005) ("[G]randparents who have 'a long-standing custodial relationship' with their grandchildren such that together they constitute an 'existing family unit' do possess a liberty interest in familial integrity and association.") (quoting Moore, 431 U.S. at 499, 503–06); Rivera v. Marcus, 696 F.2d 1016, 1024–25 (2d Cir. 1982) (holding that "custodial relatives like [a half-sister who was also a foster parent] are entitled to due process protections when the state decides to remove a dependent relative from the family environment.").

"[T]he right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." Omni Behav. Health v. Miller, 285 F.3d 646, 653–54 (8th Cir. 2002) (quoting Watterson v. Page, 987 F.2d 1, 8 (1st Cir. 1993)).  DSS took custody of A.H.H., Em.A.H.H., and A.H.H. after they told officers that Black Bear had abused them.  Doc. 9-1 at 2, 42.  Black Bear claims that there was no evidence of physical or sexual abuse by the time of their first court hearing; despite no evidence of physical or sexual abuse, Ev.A.H.H., Em.A.H.H., and A.H.H. were not returned to Black Bear, and G.R.L., L.A.H.H., and L.J.H.H. were removed from Black Bear's custody.  Doc. 2 at 3; Doc. 9 at 4; Doc. 12 at 2.

"Manufacturing false evidence may be sufficient to shock the conscience and violate a plaintiff's due process rights.  A false evidence claim requires proof that the investigators deliberately fabricated evidence to frame the defendant." Mitchell v. Dakota Cnty. Soc. Servs., 959 F.3d 887, 899 (8th Cir. 2020) (internal citations omitted).  Black Bear alleges that her own daughter impelled the children to make up a story of abuse but also contends that Odegard fabricated stories of abuse.  Doc. 9-1 at 7.  Black Bear claims Judge Linngren overlooked evidence and violated Black Bear's due process rights, but such an allegation falls short of stating a claim against Judge Linngren.  Doc. 2 at 2.  Thus, Black Bear alleges sufficient facts for her substantiative due process claim against Odegard in her official capacity for injunctive relief to survive § 1915 screening.

### (ii)    Procedural Due Process

Black Bear alleges that defendants violated her First and Fourteenth Amendment rights because she was not allowed to speak at her state court hearing on February 10, 2023.  Doc. 1 at 1; Doc. 2 at 2, 5; Doc. 9 at 3.  Under South Dakota Codified Law, "[a] child-custody determination made by a court of this state that had jurisdiction under this chapter binds all persons who have

been served in accordance with the laws of this state . . . and who have been given an opportunity to be heard." SDCL § 26-5B-106. This Court construes Black Bear's complaint as alleging a procedural due process claim for denying her an opportunity to be heard at the child custody hearing. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Smith v. McKinney, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). "Once a liberty interest is established, the next question is what process is due." Id. (quoting Williams v. Norris, 277 F. App'x 647, 649 (8th Cir. 2008) (per curiam)). "[T]he relationship of love and duty in a recognized family unit is an interest in liberty entitled to constitutional protection." Lehr v. Robertson, 463 U.S. 248, 258 (1983).

"When the state deprives [families] of their right to familial integrity, even in an emergency situation, without a prior due process hearing, the state has the burden to initiate prompt judicial proceedings to provide a post deprivation hearing." Whisman v. Rinehart, 119 F.3d 1303, 1311 (8th Cir. 1997) (citing Weller v. Dep't of Soc. Servs. for Baltimore, 901 F.2d 387, 396 (4th Cir. 1990)). The Supreme Court held that the Due Process Clause requires at a minimum notice and the opportunity to be heard appropriate to the nature of the case. Goss v. Lopez, 419 U.S. 565, 579 (1975). South Dakota Codified Law § 26-5B-106 also requires notice and the opportunity to be heard. Black Bear claims that Judge Linngren denied her the opportunity to testify at the child custody hearing for Ev.A.H.H., Em.A.H.H., and A.H.H. Doc. 1 at 1; Doc. 2 at 2, 5. Construing Black Bear's complaint liberally, she alleges that she was denied the opportunity to be heard before the removal of her grandchildren.

Thus, Black Bear alleges sufficient facts for her Fourteenth Amendment Due Process Claims against Judge Linngren in her official capacity for injunctive relief to survive § 1915 screening.

(iv)    <strong>Right to Record and Access Records</strong>

Black Bear alleges a violation of her First Amendment rights because "Roxie Erickson stated to DSS, Jennifer Odegard, [and] Shawndai Standing Cloud [that Black Bear] could not record any of [their] meetings or encounters[,]" which she claims violates her "right to access court proceedings and records." Doc. 9 at 2. See also Doc. 2 at 4 ("Jennifer [and] Shawndai SC had said [Black Bear] couldn't record out [sic] conversations via States Attorney."). The Eighth Circuit has recognized that at times there may be a constitutionally protected right to record, but there are limitations on such right. Robbins v. City of Des Moines, 984 F.3d 673, 678 (8th Cir. 2021). Because this Court cannot determine that Black Bear's claim is wholly without merit, Black Bear's claims for violating her right to record against Odegard and Standing Cloud in their official capacities for injunctive relief survive § 1915 screening.

Black Bear claims that Odegard denied her the right to access state-court records because she was not allowed to view therapy records based on an order by the state-court judge. Doc. 9-1 at 61. The United States Supreme Court has recognized "a general right to inspect and copy public records and documents, including judicial records and documents[,]" but "the right to inspect and copy judicial records is not absolute." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597–98 (1978) (footnotes omitted). "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." Id. at 598. The Eighth Circuit has recognized "a strong public policy favoring the special protection of minors and their privacy where sensitive and possibly stigmatizing matters are

24

concerned." <u>Webster Groves Sch. Dist. v. Pulitzer Pub. Co.</u>, 898 F.2d 1371, 1375 (8th Cir. 1990). Thus, Black Bear's claims for denial of access to state-court records are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

**(v)**     **Illegal Seizure**

Black Bear alleges that the defendants violated her Fourth Amendment rights by illegally seizing her grandchildren: G.R.L., Z.H.H., Em.A.H.H., Ev.A.H.H., A.H.H., J.H.H., L.A.H.H., and L.J.H.H. Doc. 1 at 1; Doc. 2 at 3–4; Doc. 9 at 3. Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. <u>Alderman v. United States</u>, 394 U.S. 165, 174 (1969). The Fourth Amendment protections to prevent an unlawful arrest or seizure belong to G.R.L., Z.H.H., Em.A.H.H., Ev.A.H.H., A.H.H., J.H.H., L.A.H.H., and L.J.H.H. Under 28 U.S.C. § 1654, a pro se plaintiff may plead their own cases in federal court, but a pro se plaintiff cannot bring claims on behalf of others. <u>See</u> <u>Johnson v. Precythe</u>, 2019 WL 931925, at *1 (E.D. Mo. Feb. 26, 2019) (collecting cases). Black Bear cannot bring claims pro se for violation of her grandchildren's Fourth Amendment rights. <u>See</u> <u>Crozier for A.C. v. Westside Cmty. Sch. Dist.</u>, 973 F.3d 882, 887 (8th Cir. 2020); <u>Marglon v. Child Prot. Servs.</u>, 4:18-CV-04156-LLP, 2019 WL 1455410, at *1–2 (D.S.D. Apr. 2, 2019) (holding that upon removal of children from their home and placement in foster care, "[e]ven if [the parent] was asserting his children's Fourth Amendment rights on their behalf, [the parent] is not an attorney and may not litigate, *pro se*, his children's Fourth Amendment claims for them.") (citing <u>Udoh v. Minn. Dep't of Human Servs.</u>, 2017 WL 4005606, at *2 (D. Minn. Sept. 12, 2007)); <u>C.R. v. Mo. Dep't of Soc. Servs.</u>, 2021 WL 4303688, at *1 (W.D. Mo. Sept. 21, 2021) ("If parents cannot litigate pro se on behalf of their minor children in § 1983 actions, grandparents certainly lack standing to do the

same."). Thus, Black Bear's Fourth Amendment claim is dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### (vi)   Equal Protection

Black Bear alleges that she has been stereotyped because she is indigenous. Doc. 2 at 3; Doc. 9-1 at 29. Liberally construing her complaint, she claims that defendants have violated her rights under the Fourteenth Amendment Equal Protection Clause. The Equal Protection Clause requires "the government to treat similarly situated people alike. Dissimilar treatment of dissimilarly situated persons does not violate equal protection. Thus, the first step in an equal protection case is determining whether the plaintiff has demonstrated that she was treated differently than others who were similarly situated to her." Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994) (internal citations omitted). "Absent a threshold showing that she is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have an equal protection claim." Id. (citing Samaad v. City of Dallas, 940 F.2d 925, 940–41 (5th Cir. 1991)).

Here, Black Bear alleges that Standing Cloud "was [her] caseworker in 2019 where [Black Bear] was called a [sic] Indian bitch and [her] case was dismissed[.]" Doc. 2 at 3. See also Doc. 9-1 at 15, 51–52. Black Bear also asked if her treatment was stereotyping because she is indigenous. Doc. 9-1 at 15, 29, 51. Although Black Bear alleges that she was stereotyped and treated poorly (and indeed no person should ever be called an "Indian bitch" under any circumstances), she has not alleged that she was treated differently than those similarly situated to her. Thus, Black Bear's Fourteenth Amendment Equal Protection claims against the defendants are dismissed without prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### (vii)   Slander and Defamation

Black Bear alleges a claim for defamation and slander in violation of her Fourth Amendment right against Odegard and Erickson. Doc. 2 at 4; Doc. 9 at 3; Doc. 9-1 at 7, 28; Doc. 12 at 2. Defamation such as through slander is not actionable under § 1983. Underwood v. Pritchard, 638 F.2d 60, 62 (8th Cir. 1981) (citing Paul v. Davis, 424 U.S. 693, 701–02 (1976)); Waller v. Rice, 2015 WL 2227799, at *2 (W.D. Ark. May 12, 2015) ("Slander is not a cognizable claim under section 1983."). "Damages for defamation are not recoverable under § 1983 because a defamed person has not been deprived of any right, privilege or immunity secured to [her] by the Federal Constitution or laws of the United States." Ellingburg v. Lucas, 518 F.2d 1196, 1197 (8th Cir. 1975) (per curiam). Thus, Black Bear's § 1983 claim for slander and defamation is dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).[16]

### e.   Civil Conspiracy Claims

Black Bear alleges civil conspiracy claims under 28 U.S.C. §§ 1983, 1985, and 1986. She alleges that Odegard "lied and coached the children to lie to the courts[,] collaborated w[ith] her supervisor, children's attorney to sway the outcome she wanted, coerce the children promices [sic] of food, clothing to testify[.]" Doc. 2 at 2. Black Bear generally claims that Standing Cloud collaborated with Odegard. Id. at 3. Black Bear alleges that Pederson was "colloberating [sic] w[ith] Jennifer Odergard. [T]hey left court house [sic] together getting into the same car, 2-10-23[.]" Doc. 9 at 3–4. See also Doc. 9-1 at 32. She claims that a Temporary Assistance for Needy

---

[16] This Court could liberally construe Black Bear's complaint to allege state-law slander and defamation claims against Odegard and Erickson. Because Black Bear only alleges claims against the defendants in their official capacities for injunctive relief, this Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over Black Bear's state-law claims.

Families document shows that the removal of her grandchildren from her custody was planned before they were removed from her care. See Doc. 9-1 at 13–14. Black Bear alleges a claim under 42 U.S.C. § 1985 stating that there was a "conspir[acy] w[ith] DSS to threaten, coerce, intimidate, [herself] as well as [her] grandchildren, DSS try to force [her] to say and sign, untruths in both of [her] cases[.]" Doc. 9 at 2. She claims that all the defendants "had knowledge of the wrong doing [sic] in these cases. [sic] and had the power to prevint [sic] the neglectful acts, but all refused to do so." Id. at 6. Black Bear claims that Duffy stated that "Judge Linngren didn't want [Black Bear] to say or testify against DSS[.]" Id. at 3.

To plead a civil conspiracy under § 1983, Black Bear must show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." Livers v. Schenck, 700 F.3d 340, 360–61 (8th Cir. 2012) (citation omitted). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008) (citing Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999)). Although a plaintiff can use circumstantial evidence to show a conspiracy, a plaintiff bringing a § 1983 conspiracy claim must allege "specific facts tending to show" that the defendants reached an agreement to deprive the plaintiff of a constitutional right or a meeting of the minds. See Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010). Black Bear has not asserted facts that show the defendants agreed to deprive her of her constitutional rights; thus, she has failed to state a § 1983 civil conspiracy claim.

Black Bear also alleges that defendants conspired under 42 U.S.C. § 1985. Doc. 2 at 1; Doc. 9 at 2. Black Bear does not specify which section of 1985 her conspiracy claim arises under.

But she has not alleged facts sufficient to raise a conspiracy claim under § 1985(1). Black Bear has not alleged a claim under the first clause of § 1985(2), because she has not stated interference with the administration of justice in a federal court. Liscomb v. Boyce, 954 F.3d 1151, 1155 (8th Cir. 2020) (quoting Harrison v. Springdale Water & Sewer Comm'n, 780 F.2d 1422, 1429 (8th Cir. 1986) (emphasis added)). The elements for a conspiracy claim under the second clause of 1985(2) are:

> 1) the defendants conspired; 2) for purposes of impeding, hindering, obstructing, or defeating in any manner the due course of justice; 3) with intent to deny a citizen of the equal protection of the law or injure [her] for lawfully enforcing, or attempting to enforce, the right of any person to the equal protection of the law.

Main St. Props. v. City of Bellevue, 2021 WL 736711, at *5 (D. Neb. Feb. 25, 2021). To state a valid conspiracy claim under § 1985(3), the plaintiff must allege:

> (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive her either directly or indirectly of her civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to person or property or the deprivation of a civil right.

Mettler v. Whitledge, 165 F.3d 1197, 1206 (8th Cir. 1999). "In order to state a claim for conspiracy under § 1985, a plaintiff 'must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement.' " Kelly v. City of Omaha, 813 F.3d 1070, 1077–78 (8th Cir. 2016) (quoting City of Omaha Emps. Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989)). Black Bear has not alleged sufficient facts to show that defendants reached an agreement or formed a civil conspiracy with the purpose of depriving her of her constitutional rights. Thus, Black Bear has not stated a valid claim under § 1985.

Black Bear also asserts that the defendants conspired against her as prohibited under 42 U.S.C. § 1986. Doc. 9 at 2. Section 1986 "claims are dependent upon a valid § 1985 claim." Jensen v. Henderson, 315 F.3d 854, 863 (8th Cir. 2002) (citing Lewellen v. Raff, 843 F.2d 1103,

1116 (8th Cir. 1988)).  Because Black Bear has not asserted a valid claim under § 1985, she cannot assert a valid claim under § 1986.  Id.  Thus, Black Bear's conspiracy claims against defendants are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

**f.    Claims Against Private Attorneys Duffy, Pederson, and Harris**

Black Bear sues Duffy, Pederson, and Harris, who are private attorneys in Rapid City, South Dakota.  Doc. 9 at 3–4.  A § 1983 claim may be brought only against state actors for violations of a federal statutory or constitutional right.  42 U.S.C. § 1983.  "[A] private party may be held liable on a § 1983 claim if '[s]he is a willful participant in joint action with the State or its agents.' "  Mershon v. Beasley, 994 F.2d 449, 451 (8th Cir. 1993) (quoting Dennis v. Sparks, 449 U.S. 24, 27 (1980)).  "[A] plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor."  Id.  Black Bear believes the private attorneys willfully participated in joint action with the State or its agents.  Doc. 9 at 3–4.  Black Bear alleges that Duffy "stated the [sic] Judge Linngren didn't want [her] to say or testify against DSS[.]"  Id. at 3.  Black Bear alleges that Pederson was collaborating with Odegard because "they left court house [sic] together getting into the same car, 2-10-23[.]"  Id. at 4.  Black Bear alleges that Harris "presented a letter in court that was not read or given to [Black Bear], Coercion – promising [her] grandchild if she told [her] to admit guilt she would get to go home, influenced the judge to termination of visatation [sic]."  Id.  Although Black Bear alleges facts that she believes supports a civil conspiracy, she has not alleged a mutual understanding or meeting of the minds to conspire against her to violate her rights.  See id. at 3–4.  Thus, Black Bear's claims against private attorneys Duffy, Pederson, and Harris are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

III.    **Motion to Appoint Counsel**

Black Bear filed a motion to appoint counsel.  Doc. 4.  "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case."  <u>Stevens v. Redwing</u>, 146 F.3d 538, 546 (8th Cir. 1998).  In determining whether to appoint counsel to a pro se litigant, this Court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present her claims.  <u>Id.</u>  At this time, Black Bear's claims do not appear to be complex, and she is able to investigate the facts and present her claims adequately.  This Court believes that Black Bear is capable of pursuing her claims pro se at this phase of litigation, and her motion for appointment of counsel, Doc. 4, is denied at this time.

IV.    **Conclusion**

Accordingly, it is

ORDERED that Black Bear's motion for leave to proceed in forma pauperis, Doc. 3, is granted.  It is further

ORDERED that Black Bear's ICWA claims under § 1912(c), (d), and (e) against DSS, Judge Linngren, Odegard, Standing Cloud, and Von Savoye survive § 1915 screening, and Black Bear's ICWA claims against Duffy, Harris, Pederson, Erickson, and McClaster are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).  It is further

ORDERED that Black Bear's § 1983 claims against DSS are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).  It is further

ORDERED that Black Bear's claims against Erickson, in her official capacity, are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).  It is further

ORDERED that Black Bear's claims against McClaster, in her official capacity, are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).  It is further

ORDERED that Black Bear's claims against Odegard, Standing Cloud, and Von Savoye in their official capacities for money damages are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(iii).  It is further

ORDERED that Black Bear's substantive due process claim against Odegard in her official capacity for injunctive relief survives § 1915 screening, and the substantive due process claim against Judge Linngren is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).  It is further

ORDERED that Black Bear's Fourteenth Amendment Procedural Due Process Claims against Judge Linngren in her official capacity for injunctive relief survive § 1915 screening.  It is further

ORDERED that Black Bear's claims for violating her right to record against Odegard and Standing Cloud in their official capacities for injunctive relief survive § 1915 screening.  It is further

ORDERED that Black Bear's Black Bear's claims for denial of access to state-court records are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).  It is further

ORDERED that Black Bear's Fourth Amendment claim is dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).  It is further

ORDERED that Black Bear's Fourteenth Amendment Equal Protection claims are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).  It is further

ORDERED that Black Bear's § 1983 claim for slander and defamation is dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).  It is further

ORDERED that this Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over Black Bear's state-law claims of slander and defamation, and her state-law claims are dismissed without considering their merits. It is further

ORDERED that Black Bear's civil conspiracy claims against defendants are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii). It is further

ORDERED that Black Bear's motion to appoint counsel, Doc. 4, is denied. It is further

ORDERED that the Clerk shall send blank summons forms and United States Marshals Service Forms (Form USM-285) to Black Bear so that she may complete the form to cause the complaint to be served upon Defendants Judge Linngren, DSS, Odegard, Standing Cloud, and Von Savoye. It is further

ORDERED that Black Bear shall complete and send the Clerk of Court a separate summons and USM-285 form for each defendant. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summonses. If the completed summons and USM-285 forms are not submitted as directed, the complaint may be dismissed. It is further

ORDERED that the United States Marshals Service shall serve the completed summonses together with a copy of the complaint, Doc. 1; Black Bear's supplements containing additional allegations, Docs. 2, 9, 9-1, 11, 12, 12-1; and this order upon the defendants. It is further

ORDERED that the defendants will serve and file an answer or responsive pleading to the amended complaints and supplements on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is finally

ORDERED that Black Bear will keep the court informed of her current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Civil Local Rules while this case is pending.

DATED March 27, 2024.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE