# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## WESTERN DIVISION

|  |  |
|---|---|
| SONJI A. BLACK BEAR,<br><br>Plaintiff,<br><br>vs.<br><br>HEIDI LINGREN,[1] STATE DEPARTMENT OF SOCIAL SERVICES, JENNIFER ODEGARD, SHAWNDAI STANDING CLOUD, MISTY MCCLASTER, MIKE VON SAVOYE, ROXIE ERICKSON, ILISJA DUFFY, PAULA PEDERSON, and BETSEY HARRIS,<br><br>Defendants. | 5:23-CV-05049-RAL<br><br><br>OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS |

Plaintiff Sonji A. Black Bear, a member of the Cheyenne River Sioux Tribe, Doc. 9-1 at 16, filed a pro se lawsuit under 42 U.S.C. §§ 1983–1986 and the Indian Child Welfare Act, 25 U.S.C. § 1914 (ICWA) against Judge Heidi Linngren, South Dakota Department of Social Services (DSS), and several DSS employees. Doc. 1 at 1; Doc. 2 at 1; Doc. 9-1 at 49. Pursuant to 28 U.S.C. § 1915, this Court screened the Complaint, dismissing in part but allowing certain claims to survive, including: (1) ICWA claims under § 1912(c)–(e) against Judge Linngren, DSS, and DSS employees Jennifer Odegard, Shawndai Standing Cloud, and Mike Von Savoye; (2) a substantive due process claim against Odegard; (3) Fourteenth Amendment procedural due process claims against Judge Linngren; and (4) First Amendment claims against Odegard and Standing Cloud.

---

[1] Black Bear lists as a defendant Heidi Lingren, a judge of the Seventh Judicial Circuit of South Dakota. The defendant's actual last name is Linngren. This Court will refer to the defendant by the actual spelling of her last name in this opinion.

Doc. 13 at 31–32. When applicable, this Court will refer to DSS, Odegard, Standing Cloud, and Von Savoye collectively as DSS Defendants.

Judge Linngren moves to dismiss Black Bear's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), for lack of subject matter jurisdiction, under Eleventh Amendment and judicial immunity, and under the <u>Younger</u> abstention and mootness doctrines. Doc. 30. DSS Defendants move to dismiss for failure to state a claim and under the <u>Younger</u> abstention doctrine. Doc. 25. Black Bear filed a Response, Doc. 27, reiterating her claims and asking the Court to apply an exception to <u>Younger</u> abstention. Black Bear subsequently filed a Petition for Writ of Review by Right to Review the Record for Fraud and Violation of Due Process and Civil Rights and Declatory [sic] Judgment, Doc. 34, requesting declaratory judgment that Defendants' actions were unconstitutional and other relief previously addressed in this Court's screening order. <u>Id.</u> at 8. For the reasons explained below, Defendants' Motions to Dismiss, Doc. 25 and Doc. 30, are granted.

## I.    Facts and Procedural History

Black Bear's Complaint stems from two state-court child custody cases involving her grandchildren that were pending in the Seventh Judicial Circuit of the State of South Dakota at the time she filed this Complaint. Black Bear was the Indian Custodian in case number A22-357 for custody of Ev.A.H.H., Em.A.H.H., and A.H.H. and in case number A22-260 for custody of Z.H.H., J.H.H., C.M., O.M.,[2] G.R.L., L.A.H.H., and L.J.H.H. Doc. 9-1 at 17–18. She alleges that

---

[2] Black Bear submitted a copy of a "Pick Up and Place Order Abuse or Neglect" from the Seventh Judicial Circuit of South Dakota. Doc. 9-1 at 18. The order identifies Black Bear as the "Indian Custodian" and addresses custody of several of Black Bear's grandchildren: Z.H.H., J.H.H., G.R.L., L.J.H.H., and L.A.H.H. <u>Id.</u> The order also discusses custody of C.M. and O.M. <u>Id.</u> Black Bear does not allege any facts indicating that she seeks custody of C.M. and O.M., and she does not indicate that C.M. and O.M. are her grandchildren. <u>See id.</u> at 10, 18; <u>see also id.</u> at 27 (stating that Black Bear is the grandmother of G.R.L., Z.H.H., Em.A.H.H., Ev.A.H.H., A.H.H., J.H.H.,

throughout the pendency of the two cases Defendants violated her right to custody of her grandchildren, right to raise her grandchildren, and certain due process and First Amendment rights. Doc. 1 at 1.

Case number A22-357 is an abuse and neglect case concerning Ev.A.H.H., Em.A.H.H., and A.H.H. Black Bear had custody of Ev.A.H.H., Em.A.H.H., and A.H.H. since 2014. Doc. 9-1 at 16. Ev.A.H.H., Em.A.H.H., and A.H.H. were removed from Black Bear's home by their mother, Tiara LaClaire. Id. at 21, 37, 64; Doc. 11 at 18. Black Bear submitted to this Court a document, allegedly typed by Tiara, which admitted that Tiara "removed [her] kids from [her] mother, Sonji BlackBears [sic] house while [Black Bear] was out of town. [Tiara] knew [Black Bear] would try and pick up [Ev.A.H.H., Em.A.H.H., and A.H.H.] so [Tiara] told [her] daughters to lie about [Black Bear] abusing them and if they keep lying they would be able to stay with [their mother]."[3] Doc. 9-1 at 21. Black Bear tried to have the children returned to her by a full faith and credit order. Doc. 9-1 at 64; Doc. 11 at 18.

On June 3, 2022, Judge Craig A. Pfeifle, a circuit judge in South Dakota's Seventh Judicial Circuit, signed a full faith and credit order, which "ordered law enforcement to remove the listed children [Ev.A.H.H., Em.A.H.H., and A.H.H.] in the tribal court order from the custody of Tiara LeClaire [sic] and place them with Sonji Black Bear." Doc. 9-1 at 1. When the Pennington County deputies arrived to pick up Ev.A.H.H., Em.A.H.H., and A.H.H., Tiara instructed her daughters to tell the deputies about the abuse they suffered at Black Bear's residence. Id. Em.A.H.H. informed

---

L.A.H.H., and L.J.H.H.). Thus, this Court construes Black Bear's complaint as not alleging any claims about custody of C.M. and O.M. Black Bear also refers to L.A.H.H. and L.J.H.H. as L.A.L. and L.J.L respectively. This Court will refer to the children as L.A.H.H. and L.J.H.H because those names are used more frequently in the record.
[3] The document claims that Tiara later asked her attorney to tell the state court that she coached her children to lie but the attorney refused. Doc. 9-1 at 21.

officers that Black Bear mocked, hit, and punched them, and A.H.H. told the deputies that Black Bear hit the girls with a spoon and banged A.H.H.'s head against a wall. Id. Ev.A.H.H. said that Black Bear has not assaulted her and "hasn't hit the girls in a long time" but instead punishes them by putting them in a corner. Id. at 1, 28; Doc. 11 at 5. All three children described how they were uncomfortable being around Gilbert Mesteth and other people who visited Black Bear's residence. Doc. 9-1 at 1. Black Bear informed officers that Ev.A.H.H., Em.A.H.H., and A.H.H. were likely being coached to lie by their mother based upon previous incidents where the Ev.A.H.H. and Em.A.H.H. admitted to fabricating stories about Gilbert. Id. at 2, 28.

The Rapid City Police Department investigated the reports of abuse from Ev.A.H.H., Em.A.H.H., and A.H.H. Id. at 2. Investigators tried to call Judge Pfeifle but were unable to reach him. Id. at 1. DSS supervisors contacted Judge Linngren, another circuit judge in South Dakota's Seventh Judicial Circuit, whose response prompted officers to take custody of the three girls. Id. at 2, 42. DSS Investigator Mike Von Savoye took Ev.A.H.H., Em.A.H.H., and A.H.H. into DSS custody. Id. at 2. The other children in Black Bear's custody, L.A.H.H., L.J.H.H., and K.M. Jr., were not taken into DSS custody because Tiara and the girls reported no neglect or abuse of the other children and a welfare check did not reveal any concerns. Id. at 1–2.

On June 9, 2022, Judge Linngren conducted a temporary custody hearing, or a 48-hour hearing, for custody of Ev.A.H.H., Em.A.H.H., and A.H.H. pursuant to SDCL § 26-7A-15. Id. at 16, 25, 39, 43–45, 75; Doc. 2 at 3. Black Bear was present at the hearing and represented by counsel. Doc. 26-1 at 2. Black Bear alleges that prior to the hearing, Von Savoye told her that the State's position was to close the case and return physical and legal custody of Ev.A.H.H., Em.A.H.H., and A.H.H. to Black Bear. Doc. 2 at 3; Doc. 9-1 at 16, 25, 39, 75. Black Bear alleges that, despite Von Savoye testifying that he intended to return the children, Judge Linngren

4

"intimidated and bullied the caseworker [Von Savoye] until he changed his mind" about returning the children. Doc. 9-1 at 75; see also Doc. 2 at 3; Doc. 9-1 at 16, 25, 39. Black Bear alleges that Judge Linngren referenced Black Bear's adult son, Skyler Warrior, with whom Black Bear remained in contact, as a reason to deny custody. See Doc. 9-1 at 16, 25, 39, 75. During Black Bear's hearing, Judge Linngren allegedly raised her voice and said she "dealt with Skyler in this court on his child and he got upset and security had to fallow [sic] him out of the building!! . . . now do you want these children around someone like that!" Id. at 16. Von Savoye allegedly looked stunned and said no. Id. at 16, 25, 39. Judge Linngren determined that Ev.A.H.H., Em.A.H.H., and A.H.H. were to be placed in foster care, and they were placed in Aberdeen, South Dakota. Id. at 25, 43–45; Doc. 1 at 3.

Following the 48-hour hearing, Judge Linngren conducted a placement hearing on June 30, 2022, an advisory hearing on July 14, 2022, and three adjudicative hearings from September 30, 2022, to February 10, 2023. Doc. 26-1 at 2. Black Bear was present and represented by counsel at each of these hearings. Id. Black Bear alleges that throughout these hearings Judge Linngren violated her rights. She alleges Judge Linngren prevented her from testifying and threatened that if she took the stand, she would be charged with perjury. Doc. 1 at 1; Doc. 2 at 2, 5. Black Bear asserts that Judge Linngren "tried to make [her] admit guilt." Doc. 2 at 2. Black Bear claims that when she asked Judge Linngren to discontinue urinalysis testing, Judge Linngren said that the urinalysis was the least of Black Bear's worries, id., and that Judge Linngren terminated her visitation rights based on a letter that was not read in court or provided to her. Id. at 5; Doc. 1 at 3; Doc. 9-1 at 30. She further asserts her rights were violated throughout the hearings because Odegard "lied and coached the children to lie to the courts," collaborated with her supervisor and the children's attorney to sway the outcome, and coerced the children to testify with promises of

food and clothing. Doc. 2 at 2; see also Doc. 9-1 at 7, 15. Black Bear claims that Odegard and other DSS employees asked the children leading questions trying to compel them to admit Black Bear abused them. Doc. 9-1 at 9, 67–68; Doc. 11 at 19.

Black Bear's claims surrounding case number A22-260 began on August 25, 2022, when Judge Linngren, upon the request of DSS, ordered G.R.L., L.A.H.H., and L.J.H.H. to be removed from Black Bear's custody and placed in DSS custody. Doc. 9-1 at 18. At the time of the order, G.R.L. was sixteen years old, and L.A.H.H. and L.J.H.H. were six years old. Id. at 14, 18, 26. Black Bear requested that the children be kept together, but L.A.H.H. and L.J.H.H. were placed in a foster home, and G.R.L. was placed in WellFully, an adolescent care center in Rapid City, South Dakota. Doc. 9-1 at 26, 35. On August 27, 2022, Black Bear received notice of a 48-hour hearing for G.R.L., L.J.H.H., and L.A.H.H. Id. at 18. The hearing was scheduled for August 29, 2022, before Judge Linngren in the Pennington County Courthouse. Id. Black Bear claims that in "[c]ourt on the 29th of August the [Pennington County deputy] states attorney Roxie Erickson stated the children were being raped in [Black Bear's] home and police were at [her] house every day." Id. at 16. Judge Linngren did not return custody of G.R.L., L.J.H.H., and L.A.H.H. to Black Bear. Id.

While cases A22-357 and A22-260 remained ongoing, Black Bear informed Odegard and other DSS employees of her many concerns with the foster care and care center placements of her grandchildren. Id. at 8, 11, 25, 28, 37, 39–40, 56, 63, 68, 72; Doc. 1 at 3; Doc. 11 at 20; Doc. 12 at 2. Black Bear reported her concern that her grandchildren were allowed and even encouraged to engage in sexual activity, which was not permitted while the children were in her custody. Doc. 1 at 3; Doc. 2 at 5; Doc. 9-1 at 11, 27, 31, 33, 37, 40, 51, 65; Doc. 11 at 1–2, 8, 11–12, 19, 21. On November 20, 2022, G.R.L. informed Black Bear of a picture she received of her cousin Ev.A.H.H.

lying on a bed with a boy, both of whom were wearing clothes. Doc. 1 at 3; Doc. 9-1 at 9–10, 28, 36–37; Doc. 11 at 1. On December 2, 2022, Black Bear reported the picture to Odegard. Doc. 1 at 3; Doc. 9-1 at 9–10. Black Bear alleges that her grandchildren told her in a video recorded after they ran from DSS placement that "the foster mother was encourging [sic] sex and brought boys to and from her house to engage in sexual activity in her home." Doc. 1 at 3; see also Doc. 9-1 at 11, 37, 65; Doc. 11 at 19. Black Bear reported this activity to Odegard and requested that her grandchildren be returned to Rapid City, South Dakota. Doc. 1 at 3.

On February 1, 2023, Black Bear had a visit with Em.A.H.H., Ev.A.H.H., A.H.H., J.H.H., L.A.H.H., and L.J.H.H. Doc. 9-1 at 64; Doc. 11 at 18. After the visit, Black Bear emailed Odegard to ask why G.R.L. was not present. Doc. 9-1 at 64; Doc. 11 at 18. Odegard informed Black Bear that G.R.L. was reported as a runaway. Doc. 9-1 at 64; Doc. 11 at 18. On February 3, 2023, Black Bear received a call informing her that police were at her house looking for G.R.L. Doc. 9-1 at 65; Doc. 11 at 18. An officer had received an anonymous call from someone claiming to be a family member and informing him that G.R.L. was at Black Bear's residence. Doc. 9-1 at 65; Doc. 11 at 18. Black Bear alleges that the anonymous caller was Odegard, reporting false information to the police. Doc. 9-1 at 65; Doc. 11 at 18–19.

Black Bear alleges that Defendants violated her Fourteenth Amendment right to be free to raise, see, and visit her grandchildren, right to be free to have a fair and unbiased hearing, and right to be free from unreasonable intrusion. Doc. 1 at 1. She asserts that DSS "never made reasonable efforts to return [her] grandchildren," id. at 3, and that Judge Linngren violated her due process rights by overlooking evidence throughout the child-custody proceedings. Black Bear claims Odegard "lied and coached the children to lie to the courts[,] collaborated w[ith] her supervisor [and the] children's attorney to sway the outcome she wanted, [and] coerce[d] the children [with]

7

promices [sic] of food, clothing to testify." Doc. 2 at 2. Black Bear further alleges Odegard and Standing Cloud violated her First Amendment rights because they told her she was not allowed to record her conversations with DSS employees. Doc. 1 at 1; Doc. 2 at 4. Odegard emailed Black Bear to schedule a meeting and informed Black Bear "recording will not be allowed, per the states attorneys [sic] office." Doc. 9-1 at 66.

Black Bear filed this lawsuit on July 18, 2023. Doc. 1. Judge Linngren, upon learning she was named a defendant, recused herself on July 24, 2023, from both state-court custody cases A22-357 and A22-260. Doc. 32 ¶ 5. Black Bear subsequently filed numerous supplements to her Complaint. Docs. 2, 9, 11, 12. On March 27, 2024, this Court screened the Complaint under 28 U.S.C. § 1915 and allowed four of Black Bear's claims to survive: (1) ICWA claims under § 1912 concerning case number A22-357; (2) substantive due process claims against Odegard; (3) Fourteenth Amendment procedural due process claims against Judge Linngren; and (4) First Amendment claims against Odegard and Standing Cloud. Doc. 13. Because Black Bear's Complaint does not specify whether she is suing the defendants in their individual or official capacity, all surviving claims are treated as official capacity claims. Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995).

Defendants now move to dismiss for failure to state a claim, for lack of jurisdiction, and under the Younger abstention doctrine. Docs. 25, 30. Judge Linngren additionally moves to dismiss claims against her under the doctrine of mootness and Eleventh Amendment immunity. Doc. 30. On January 23, 2025, Black Bear filed another supplement—a state-court order closing the file for case number A22-357, in which Judge Stacy Wickre of the Seventh Judicial Circuit ordered that the minor children be dismissed from the custody of DSS and released to Black Bear, the Indian Custodian, effective January 2, 2025. Doc. 40. at 2. Judge Linngren supplemented her

8

argument that certain claims against her are moot following the state-court order dismissing the minor children from the custody of DSS. Doc. 41.

## II.        Legal Standards

The United States Court of Appeals for the Eighth Circuit requires district courts to construe pro se complaints liberally. Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). This means "that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." Id. at 915. Importantly, however, this rule of liberal construction does not excuse a pro se plaintiff from alleging enough facts to support her claims. Id. at 914. That is, even though a plaintiff is proceeding pro se, the district court will not "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." Id. at 915.

Portions of Black Bear's complaint survived initial screening under 28 U.S.C. § 1915A, Doc. 13, but Black Bear's complaint is still susceptible to a motion to dismiss. East v. Dooley, No. 4:19-CV-04126-RAL, 2020 WL 5593923, at *2 n.3 (D.S.D. Sept. 18, 2020), aff'd, 847 F. App'x 359 (8th Cir. 2021); see also Braun v. Hanson, No. 18-cv-3355 (JNE/ECW), 2020 WL 1496580, at *2 (D. Minn. Jan. 27, 2020) (rejecting the argument that survival of § 1915A's screening requirements bars defendants from moving to dismiss).

On a motion to dismiss under Rule 12(b)(6), courts must accept a plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor, but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (alteration in original) (citation and internal marks omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. Such a challenge can be either facial or factual in nature. Moss v. United States, 895 F.3d 1091, 1097 (8th Cir. 2018); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Regardless of whether the jurisdictional attack is facial or factual, the plaintiff has the burden of proving subject matter jurisdiction. V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). Under a facial attack, the court generally "restricts itself to the face of the pleadings," Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborn, 918 F.2d at 729 n.6), but it may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary judgment." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (internal quotations and citation omitted); see

also <u>Jones</u>, 727 F.3d at 846 (acknowledging "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)" (citation omitted)).

In contrast, where a factual attack is made on the court's subject-matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. <u>Osborn</u>, 918 F.2d at 730 (citation omitted); <u>see also</u> <u>Gould, Inc.</u> <u>v. Pechiney Ugine Kuhlmann</u>, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction[,] . . . the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." <u>Osborn</u>, 918 F.2d at 729 n.6 (internal citation omitted). Therefore, in deciding a factual challenge to subject matter jurisdiction, the court need not view the evidence in the light most favorable to the non-moving party. <u>See</u> <u>id.</u> at 729 n.6, 730.

The issues of mootness, sovereign immunity, and abstention are jurisdictional in nature. <u>See</u> <u>Keup v. Hopkins</u>, 596 F.3d 899, 904 (8th Cir. 2010) ("Questions of mootness are matters of subject matter jurisdiction."); <u>Brown v. United States</u>, 151 F.3d 800, 803 (8th Cir. 1998) ("Sovereign immunity is a jurisdictional doctrine."); <u>Oglala Sioux Tribe v. Fleming</u>, 904 F.3d 603, 611 (8th Cir. 2018) ("The question under the abstention doctrine is . . . . whether the federal court should refrain from exercising jurisdiction and allow the claims to be resolved in the state proceedings."). These challenges to subject matter jurisdiction are factual because they attack this Court's "very power to hear the case," and thus, this Court "is free to weigh the evidence and

11

satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn, 918 F.2d at 730.

## III.    Analysis

### A.  ICWA Claims Against Judge Linngren and DSS Employees

State-court case A22-357 involved custody of Black Bear's grandchildren, Ev.A.H.H., Em.A.H.H., and A.H.H. Liberally construed, Black Bear's Complaint raises several ICWA claims concerning case A22-357, namely that the state-court proceedings deprived her as Indian custodian of "the right to examine all reports or other documents filed with the court" under 25 U.S.C. § 1912(c), that DSS and its employees have not provided remedial services and rehabilitative programs to prevent the breakup of her family as required under 25 U.S.C. § 1912(d), and that the determination to remove her grandchildren from her custody was made in the absence of clear and convincing evidence in violation of 25 U.S.C. § 1912(e). Black Bear requests that this Court "close this [state] court hearing and return [her] grandchildren." Doc. 2 at 6.

Under South Dakota law, children may be removed from their homes in exigent circumstances. SDCL § 26-7A-1 et seq. The procedures in such cases include three phases: the emergency removal phase, id. §§ 26-7A-13 to 19, the adjudication phase, id. §§ 26-7A-34 to 87, and the dispositional phase, id. §§ 26-7A-90 to 104. South Dakota also has procedures for when child custody proceedings implicate the Indian Child Welfare Act, 25 U.S.C. § 1912. Id. §§ 26-7A-15 to 15.3. At the time Black Bear brought this action in July 2023, case A22-357 had not yet reached the dispositional phase. Doc. 26-1 ¶¶ 11–12. And while this Court reviewed Black Bear's federal case, state case A22-357 reached a final disposition on January 2, 2025, and Black Bear's grandchildren were ordered to be returned to her custody. Doc. 40 at 2.

12

Because the relief Black Bear seeks has been granted by the state court through the resolution of case A22-357, her ICWA claims are moot and must be dismissed. For this Court to have jurisdiction of a claim, "the litigants must present an actual, ongoing controversy within the meaning of Article III of the Constitution." Iowa Prot. & Advoc. Servs. v. Tanager, Inc., 427 F.3d 541, 543 (8th Cir. 2005) (internal quotations omitted). The doctrine of mootness "applies to all stages of the litigation and applies with equal force to actions for declaratory judgment as it does to actions seeking traditional coercive relief." Hickman v. State of Mo., 144 F.3d 1141, 1142 (8th Cir. 1998) (cleaned up and citations omitted). Black Bear's grandchildren Ev.A.H.H., Em.A.H.H., and A.H.H. were returned to her custody upon closure of case A22-357, and there is no longer an ongoing controversy. Therefore, this Court must dismiss the claim related to those children for lack of jurisdiction.

Even if this Court had jurisdiction, it would decline to exercise it under the abstention rule set forth in Younger v. Harris, 401 U.S. 37 (1971). Under the Younger abstention doctrine, principles of "comity and federalism require federal courts to abstain from interfering with" certain pending state-court proceedings. Wassef v. Tibben, 68 F.4th 1083, 1086 (8th Cir. 2023). Younger abstention initially applied only to criminal proceedings but has since extended to "certain 'civil enforcement proceedings'" and "pending 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 78 (2013) (cleaned up) (quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 368 (1989) ("NOPSI")). In the Eighth Circuit, courts conduct the Younger abstention analysis as a three-part inquiry:

> First, does the underlying state proceeding fall within one of the three "exceptional circumstances" where Younger abstention is appropriate [under NOPSI and Sprint]? Second, if the underlying proceeding fits within a Younger category, does the state proceeding satisfy what are known as the "Middlesex" factors? And third,

13

even if the underlying state proceeding satisfies the first two inquiries, is abstention nevertheless inappropriate because an exception to abstention applies?

Wassef, 68 F.4th at 1087 (quoting 375 Slane Chapel Rd., LLC v. Stone Cnty., Missouri, 53 F.4th 1122, 1127 (8th Cir. 2022)).

Here, the first prong is met. Younger abstention applies to child custody proceedings. Moore v. Sims, 442 U.S. 415, 423–35 (1979). The Eighth Circuit has specifically recognized that "South Dakota's temporary custody proceedings are civil enforcement proceedings to which Younger principles apply." Fleming, 904 F.3d at 610.

This Court next addresses the Middlesex factors. Wassef, 68 F.4th at 1087 (cleaned up and citation omitted). Under Middlesex, the court must ask whether the state proceeding "(1) is judicial in nature, (2) implicates important state interests, and (3) provides an adequate opportunity to raise constitutional challenges." Id. This action meets all three requirements. First, the child custody proceedings are undoubtedly judicial in nature. See SDCL § 26-7A-1 et seq. Second, the proceedings implicate an important state interest, as " [t]he government has a compelling interest in protecting minor children, especially when it is necessary to protect them from their [custodian]." Mitchell v. Dakota Cnty. Soc. Servs., 959 F.3d 887, 897 (8th Cir. 2020). Third, South Dakota law requires the courts in child custody proceedings to "advise the child and the child's parents, guardian, or custodian involved in any action or proceedings . . . of their constitutional and statutory rights, including the right to be represented by an attorney, at the first appearance of the parties before the court." SDCL § 26-7A-30. Moreover, the parties have the right to file a motion for new hearing at the conclusion of the proceedings, and if that motion is denied, the parties have the right to appeal. Id. Black Bear's attack on the state-court's procedures "does not establish the inadequacy of those procedures for Younger abstention purposes." Wassef, 68 F.4th at 1089.

14

The final step of the <u>Younger</u> abstention analysis asks whether "abstention [is] nevertheless inappropriate because an exception to abstention applies." <u>Id.</u> at 1087 (cleaned up and citation omitted). Abstention may be inappropriate where there is a "showing of bad faith, harassment, or some other extraordinary circumstance." <u>Middlesex</u>, 457 U.S. at 435. Courts also should not abstain "where a state statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.'" <u>Plouffe v. Ligon</u>, 606 F.3d 890, 893 (8th Cir. 2010) (quoting <u>Trainor v. Hernandez</u>, 431 U.S. 434, 447 (1977)).

Black Bear's Complaint alleges Odegard "lied and coached the children to lie to the courts[,] collaborated w[ith] her supervisor, children's attorney to sway the outcome she wanted, coerce the children promices [sic] of food, clothing to testify." Doc. 2 at 2. Black Bear generally claims that Standing Cloud collaborated with Odegard. <u>Id.</u> at 3. Black Bear alleges that Pederson was "colloberating [sic] w[ith] Jennifer Odergard. [T]hey left court house [sic] together getting into the same car, [on] 2-10-23." Doc. 9 at 3–4. The Eighth Circuit declined to apply the bad faith exception when similar allegations were made in <u>Tony Alamo Christian Ministries v. Selig</u>. 664 F.3d 1245, 1254 (8th Cir. 2012) (dismissing as implausible allegations that "Defendants conducted the investigation and seized the children in 'bad faith,' that is, in order to harass and intimidate"). Here, Black Bear's own filings indicate the DSS Defendants acted after Em.A.H.H. told responding officers that Black Bear mocked, hit, and punched them, and A.H.H. told the officers that Black Bear hit the girls with a spoon and banged her head against a wall. Doc. 9-1 at 1. Black Bear's own filings undermine the plausibility of DSS Defendants having a bad faith motive to harm Black Bear or the children. <u>Cf.</u> <u>Iqbal</u>, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

15

defendant is liable for the misconduct alleged."). Thus, no exception to abstention applies, and this Court abstains from exercising jurisdiction over Black Bear's ICWA claims against Judge Linngren and DSS Defendants.

### B. Substantive Due Process Claim Against Odegard in Her Official Capacity

Black Bear alleges Odegard violated her due process rights by fabricating stories of abuse, resulting in DSS taking custody of her grandchildren. Black Bear, as Indian Custodian of her grandchildren, has an "important but limited substantive due process right in the care and custody" of her grandchildren. Abdouch v. Burger, 426 F.3d 982, 987 (8th Cir. 2005). The right is limited by the compelling state interest in the safety and welfare of the minor children. Id. Black Bear's "right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." Omni Behav. Health v. Miller, 285 F.3d 646, 653–54 (8th Cir. 2002).

The Eleventh Amendment bars damages claims against states in federal courts. U.S. Const. amend. XI. Federal claims for damages against state employees acting in their official capacity are also barred. Murphy v. Arkansas, 127 F.3d 750, 754 (8th Cir. 1997). Thus, this Court considers only Black Bear's claim seeking prospective relief. See Ex parte Young, 209 U.S. 123, 159 (1908). Black Bear requests that this Court "close [her] [state] court hearing and return [her] grandchildren." Doc. 2 at 6. To the extent that her request involves case A22-357 for custody of Ev.A.H.H., Em.A.H.H., and A.H.H. her claim is dismissed as moot since that case has been closed and she once again has custody of Ev.A.H.H., Em.A.H.H., and A.H.H. To the extent that the relief she requests involves case A22-260 for custody of Z.H.H., J.H.H., G.R.L., L.A.H.H., and L.J.H.H., this Court declines to exercise jurisdiction under the Younger abstention doctrine.

Younger abstention applies to preclude federal intrusion into "pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial

functions." Sprint, 571 U.S. at 78 (cleaned up and internal quotations omitted). "For purposes of applying Younger abstention, the relevant time for determining if there are ongoing state proceedings is when the federal complaint is filed." Tony Alamo Christian Ministries v. Selig, 664 F.3d 1245, 1250 (8th Cir. 2012). Black Bear commenced this lawsuit while case A22-260 was ongoing, leaving Younger abstention applicable. Doc. 9-1 at 18 (state-court abuse and neglect case beginning on August 25, 2022).

As was true for case A22-357, each prong of the three-part test for abstention is met in case A22-260. First, the state-court proceeding is one in which Younger abstention applies. Fleming, 904 F.3d at 610 ("South Dakota's temporary custody proceedings are civil enforcement proceedings to which Younger principles apply."). Second, the Middlesex factors counsel in favor of abstention because the state-court proceeding is judicial in nature, implicates the important state interest of protecting children from abuse, and provides adequate opportunity to raise constitutional challenges both throughout the proceeding and on appeal. See SDCL § 26-7A-1 *et seq.* Finally, Black Bear has not pled sufficient facts for this court to infer plausible bad faith on the part of the Defendants to warrant an exception to abstention. After all, Black Bear's own filings acknowledge that the children told DSS of being subjected to abuse in Black Bear's care. Doc. 9-1 at 1, 28; Doc. 11 at 5. Black Bear's allegation that the children fabricated the stories, even if true, does not demonstrate bad faith on the part of the Defendants in commencing and pursuing case A22-260. Thus, there is no reason for this Court to interfere with the state proceeding rather than abstain under Younger.

### C. Fourteenth Amendment Procedural Due Process Claim Against Judge Linngren

Black Bear claims that Judge Linngren failed to admit certain evidence and denied Black Bear the opportunity to testify at the child custody hearing for Ev.A.H.H., Em.A.H.H., and A.H.H. Doc. 1 at 1; Doc. 2 at 2, 5. Construing Black Bear's complaint liberally, she alleges that she was denied the opportunity to be heard before the removal of her grandchildren. Because Black Bear does not specify whether she is suing Judge Linngren in her individual or official capacity, the suit is treated as if only including official capacity claims. Docs. 1, 2, 9; Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995). Judge Linngren moves to dismiss this claim, arguing, among other reasons, she is entitled to sovereign immunity under the Eleventh Amendment. Doc. 30 at 1.

"Under the doctrine of sovereign immunity, states are immune from suit." Courthouse News Serv. v. Gilmer, 48 F.4th 908, 911 (8th Cir. 2022) (cleaned up and internal quotations omitted). "[E]ven though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." Edelman v. Jordan, 415 U.S. 651, 663 (1974). Eleventh Amendment immunity applies to suits against the judiciary of a state. See Denke v. S.D. Dep't of Soc. Servs., 829 F.2d 688, 689 (8th Cir. 1987) (recognizing the Eleventh Amendment bar suits "against the state or one of its agencies"). South Dakota circuit courts are part of South Dakota's government and immune from suit under the Eleventh Amendment since they are authorized by the South Dakota Constitution and created by the state legislature. S.D. Const. art. II ("The powers of the government of the state are divided into three distinct departments, the legislative, executive and judicial; and the powers and duties of each are prescribed by this Constitution."); S.D. Const. art. V, § 1 ("The judicial power of the state is vested in a unified judicial system consisting of a Supreme Court, circuit courts of general jurisdiction and courts of limited original jurisdiction as established by the Legislature."); SDCL § 16-5-1.2 (establishing the seven judicial circuits).

18

In <u>Ex parte Young</u>, the Supreme Court recognized a narrow exception to sovereign immunity that allows plaintiffs to seek judicial orders in federal court to prevent state officials from enforcing state laws that are contrary to federal law. 209 U.S. 123, 159 (1908). The doctrine of <u>Ex parte Young</u> "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, the state is no longer the real party in interest." <u>Courthouse News Serv.</u>, 48 F.4th at 911 (internal quotations omitted). In determining whether the doctrine of <u>Ex parte Young</u> applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." <u>Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.</u>, 535 U.S. 635, 645 (2002) (cleaned up and internal quotations omitted).

Here, <u>Ex parte Young</u> is inapplicable because Black Bear's procedural due process claim does not seek prospective relief. Black Bear's Complaint asserts "[Judge] Linngren, although there is evidence before our first hearing that no abuse physical or sexual happened case was left open, she threatened me that if I took the stand in my defense I would be charged [with] perjury" and that Judge Linngren improperly considered "a letter that wasn't read in court [or] provided to me." Doc. 2 at 5. Black Bear seeks $20 million in money damages, Doc. 1 at 4, and she requests that this Court "close this [state] court hearing" and return custody of her grandchildren, Doc. 2 at 6. Ultimately, Black Bear is asking this Court to void an issued state-court order that allegedly violates the Constitution and to compensate her for alleged harm the state-court order caused. The relief she requests is retroactive and does not surmount sovereign immunity under the Eleventh Amendment.

Moreover, under these circumstances, Judge Linngren is not a state *executive* official, and the due process claim against her does not fall within the scope of <u>Ex parte Young</u>. 209 U.S. at

163 ("[T]he right to enjoin an individual . . . does not include the power to restrain a court from acting in any case brought before it . . . ."). The exception in Ex parte Young "does not normally permit federal courts to issue injunctions against state-court judges or clerks." Whole Woman's Health v. Jackson, 595 U.S. 30, 39 (2021). The traditional remedy for an allegedly erroneous state-court ruling is an appeal, "not the entry of an *ex ante* injunction preventing the state court from hearing cases." Id. Here, Black Bear sued Judge Linngren before final disposition of the child custody cases, Doc. 26-1 at 2; Doc. 32 ¶ 5, hoping this Court would intervene and decide the issue in Black Bear's favor. Ex parte Young does not apply in such circumstances, and thus, Judge Linngren is immune from this lawsuit. Black Bear of course retains the opportunity to appeal within the state court system what she considers erroneous rulings by Judge Linngren.

### D. First Amendment Claim Against Odegard and Standing Cloud in Their Official Capacities

Black Bear's final claim alleges that Odegard and Standing Cloud violated her First Amendment right because they told her she was not allowed to record her conversations with DSS employees. Doc. 9 at 2; Doc. 2 at 4. The Eighth Circuit has recognized that at times there may be a constitutionally protected right to record public officials, but there are limitations on such right. Robbins v. City of Des Moines, 984 F.3d 673, 678 (8th Cir. 2021). The right is "subject to reasonable time, place, and manner restrictions." Fields v. City of Philadelphia, 862 F.3d 353, 360 (3d Cir. 2017). To determine whether Black Bear has a First Amendment right to record her conversations with Odegard and Standing Cloud, this Court must: (1) decide whether recording conversations with DSS employees is speech protected by the First Amendment; (2) "identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic"; and (3) "assess whether the justifications for exclusion

from the relevant forum satisfy the requisite standard." Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 797 (1985).

Black Bear's complaint only alleges one fact concerning this claim: "Jennifer [Odegard] and Shawndai SC [Standing Cloud] said I couldn't record our conversations via States Attorney." Doc. 2 at 4. Black Bear also attached an email wherein Odegard seeks to schedule a meeting with Black Bear and states, "Also recording will not be allowed, per the states attorneys [sic] office." Doc. 9-1 at 66. DSS Defendants move to dismiss her Complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 25.

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. While this Court construes Black Bear's pro se complaint liberally, she is not excused from alleging enough facts to support her claim. Stone, 364 F.3d at 914–15. This Court cannot "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." Id. at 915.

Here, Black Bear's one-sentence assertion is insufficient to support a First Amendment claim. Even accepting Black Bear's allegation as true and drawing reasonable inferences from it, this Court cannot assume facts not alleged, such as where the meeting was to occur or the nature of the conversation with the DSS employees. Without more, this Court is unable to determine whether the act of recording is protected by the First Amendment nor the nature of the forum. See also Pitta v. Medeiros, 90 F.4th 11, 17–25 (1st Cir.), cert. denied, 144 S. Ct. 2631 (2024) (dismissing under 12(b)(6) plaintiff's claim that defendants violated a First Amendment right to video record child's Individualized Education Program team meeting).

**IV.    Conclusion**

For the reasons explained, it is therefore

ORDERED that the Defendants' motions to dismiss, Docs. 25 and 30, are granted.  It is further

ORDERED that the Plaintiff's Motion for Writ of Review, Doc. 34, is denied.

DATED this 24th day of February, 2025.

                              BY THE COURT:


                              ROBERTO A. LANGE
                              CHIEF JUDGE